## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:21-CR-00156 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| DAYQUAIN SINISTERRA | ) | MARCH 1, 2024 |
| | ) | |
| | ) | |

## MEMORANDUM OF DECISION
### RE: MOTION TO SUPPRESS (ECF NO. 448)

Kari A. Dooley, United States District Judge

On November 20, 2018, following a series of shootings in October and November 2018, detectives from the Waterbury Police Department ("WPD") Gang Task Force accompanied a Connecticut state probation officer on a visit to Witness 1's ("W1") home. W1 had previously provided information to WPD officers, implicating Dayquain Sinisterra ("Sinisterra" or "Defendant") in shootings that occurred on October 6 and October 11. During the November 20 visit, officers located W1 and Sinisterra inside W1's residence. Both had active warrants and were taken into custody. Sinisterra's cell phone was seized at the time of his arrest. Upon questioning, W1 implicated Sinisterra in a third shooting that occurred on November 18, 2018, and informed officers that Sinisterra contacted him via cellphone shortly after that shooting. On December 3, 2018, WPD officers applied for and obtained two search warrants related to Sinisterra's phone: one for cell phone records in the possession of his wireless carrier, and one for the phone itself, i.e., a warrant to extract data from the phone. Both warrants sought information with a date range of October 6, 2018, through November 20, 2018.

Sinisterra now seeks to suppress all evidence derived from the search of his cellphone or received from his carrier, pursuant to the December 3, 2018, warrants. He argues that the warrants

lacked particularity, were substantively overbroad (with one narrow exception) and were temporally overbroad, all in violation of the Fourth Amendment. The Government opposes Sinisterra's motion, arguing that the warrants were supported by probable cause and not overbroad, substantively or temporally. Conceding that the warrants were insufficiently particular due to their failure to list the crime for which evidence was being sought on the face of the warrants, the Government argues that under the circumstances the good faith exception to the exclusionary rule precludes suppression. For the reasons that follow, Sinisterra's motion to suppress, ECF No. 448, is DENIED.

**FACTUAL BACKGROUND**

The following facts, undisputed for purposes of this motion, are summarized from the parties' memoranda and the warrant application packages at issue here.[1]

On December 3, 2018, WPD Detectives John Sanchez and Steven Brownell (the "affiants") applied to the Connecticut Superior Court for two warrants related to a phone that belonged to Defendant Dayquain Sinisterra. *See* Def.'s Ex. A ("Location Warrant") & Def.'s Ex. B ("Cell Warrant"), ECF Nos. 449 and 449-1. The warrant applications, including their supporting affidavits, were prepared on the State of Connecticut's standard warrant application Form JD-CR-61. *See Id*.

The Location Warrant sought access to "Cell Phone Records of Sprint/Nextel cell phone number 203-510-5248," to disclose "telephone records, basic subscriber information, incoming

---

[1] Sinisterra included both warrants as sealed Exhibits A and B at ECF Nos. 449 and 449-1. Both parties referred to that filing when referencing the two warrants in question. The Government mislabeled them at 449-1 and 449-2, but distinguished between them in shorthand as the "Location Warrant" or ("Loc. Warrant") and the "Cell Warrant." The Court adopts the Government's shorthand, and will cite to the two warrants as: Def.'s Ex. A ("Location Warrant"), ECF No. 449 and Def.'s Ex. B ("Cell Warrant"), ECF No. 449-1.

The page numbers cited to in this ruling regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

and outgoing calls and text messages, any SMS and/or MMS messages, any and all data usage, cell tower locations and/or GPS locations, call identifying and cell site information and activation from 10/6/18 to 11/20/18." Loc. Warrant at 2, ECF No. 449. The affiants averred that they had probable cause to believe that evidence of the offense "Assault in the First Degree in violation of C.G.S. 53a-59" would be found in those records, which were located at Sprint/Nextel Corporate Security. *Id*.

The Cell Warrant sought information stored on the phone itself, specified as "[a]ny and all communications from 10/6/18-11/20/18 including but not limited to any and all SMS text messages, MMS messages, iMessages, OTT Messages, saved photos or videos, and call logs that are located within the data contained within a black Apple iPhone… Sprint Telephone Number of 203-510-5248." Cell Warrant at 2, ECF No. 449-1. The warrant specified that the phone itself was located at the WPD Gang Task Force (GTF). As with the Location Warrant, the affiants asserted that they had probable cause to believe the property sought constituted evidence of Assault in the First Degree. *Id*.

The next three pages of each warrant application package contain essentially identical affidavits prepared by the affiants, reciting facts to support their assertion of probable cause. Loc. Warrant at 3–5; Cell Warrant at 3–6. In the first paragraph of each affidavit, the affiants described their police experience, their assignment to the WPD GTF and the purpose of the task force. Loc. Warrant at 3 ¶ 1; Cell Warrant at 3 ¶ 1. In the following paragraphs, the affidavits recited the facts supporting a finding of probable cause.

In 2018, the WPD GTF had "been conducting a lengthy and ongoing investigation into two street gangs known as the 960 gang and the ATM gang." Loc. Warrant at 3 ¶ 2; Cell Warrant at 3 ¶ 2. According to the warrant affidavits, over 60 shootings in the city of Waterbury were

"associated" to those two gangs. *Id*. By this stage in the investigation the GTF was "able to associate certain members with certain vehicles and locations," and learned that the 960 gang had "also been in a fued [*sic*] with a group known as the Ave Block," which frequented the Walnut/Walnut Ave area. *Id*.

More specifically, WPD was investigating three shootings. The first occurred on October 6, 2018, near 1058 Bank St., an area frequented by ATM gang members, and where ATM members had been shot in the past. Loc. Warrant at 3 ¶ 3; Cell Warrant at 3 ¶ 3. The shooting involved a single victim who was shot in the buttocks area. Investigators located video surveillance in the vicinity, indicating that the suspect vehicle was a small, newer, gray or silver sedan. They also found several .40 caliber and .45 caliber shell casings along the roadway at the scene. *Id*.

The second shooting occurred on October 11, 2018, near 50 Walnut Avenue, an area frequented by members of the Ave Block. Loc. Warrant at 3–4 ¶ 4; Cell Warrant at 3–4 ¶ 4. There were two victims; one was shot in the head and was later pronounced dead, the other was shot in the stomach and was paralyzed. *Id*. Investigators once again discovered video surveillance footage, which showed that one of the suspect vehicles was a "small gray sedan which matched the suspect vehicle from the incident on 10/6/18 on 1058 Bank St." *Id*. They also located several 9mm and .40 caliber shell casings during the investigation. *Id*.

The last of the three shootings also occurred near 1058 Bank St., on November 18, 2018. Loc. Warrant at 4 ¶ 7; Cell Warrant at 4 ¶ 7. Two people were shot, one in the face and the other in the leg. *Id*. The victim shot in the leg was a known member of the ATM gang. *Id*. Witnesses described the gun shots as coming from a dark colored SUV and officers determined that at least one of the shooters was wearing a "ski mask type cover up to conceal his face." Multiple shell casings in .380 caliber, .40 caliber, and 7.62 caliber were recovered at the scene. *Id*. Officers

recovered security footage showing the dark colored SUV and determined that it was possibly an Audi with a "distinct sticker on the upper right portion of the back window." Loc. Warrant at 4 ¶ 8; Cell Warrant at 4 ¶ 8.

WPD detectives conducted interviews regarding the shootings. On November 1, 2018, Detective Brownell spoke with a Source of Information (SOI1) regarding the October 11, 2018, shooting on Walnut St. Loc. Warrant at 4 ¶ 5; Cell Warrant at 4 ¶ 5. SOI1 told Detective Brownell that members of 960 carried out the shooting, specifically individuals known as "Maine" (first name Jermaine), "Swervo" ("Dayquain Sinestari" [*sic*]), "NBA Kev," Chris Thompson, and "Gabe." *Id*. SOI1 also described one of the suspect vehicles as a silver Hyundai. *Id*.

On November 14, 2018, Detectives Sanchez and Howles interviewed Witness 1 ("W1"). Loc. Warrant at 4 ¶ 6; Cell Warrant at 4 ¶ 6. W1 indicated that an individual named "Quan" "had been in a stolen gray Hyundai, along with other 960 members, during the shootings on Walnut Avenue and the 1058 Bank St. shooting on 10/6/18." *Id*.

On November 20, 2018, WPD detectives accompanied Probation Officer Tim Fenn on a home visit to W1's residence. Loc. Warrant at 4–5 ¶ 9; Cell Warrant at 4–5 ¶ 9. At the residence detectives encountered both W1 and Dayquain Sinisterra, both of whom were known members of 960. *Id*. They also both had active arrest warrants, and so were taken into custody and transported to the WPD Detective Bureau. The detectives applied for and were granted a search and seizure warrant for W1's residence based on their plain view observations. *Id*.  Detectives also observed a dark colored Audi Q5 SUV "in close proximity to the residence." *Id*. Further investigation showed that the Audi was reported stolen from Shelton, CT, and had a sticker "on the upper right portion of the rear window." *Id*. Officers had the vehicle towed to WPD headquarters.

Following his detention, W1 spoke with detectives. He told them that Sinisterra was one of the shooters at 1058 Bank St. on November 18, 2018. Loc. Warrant at 5 ¶ 10; Cell Warrant at 5 ¶ 10. He confirmed that the black Audi found near his residence was the vehicle used in that shooting, let detectives know that the key to it was in his residence, and stated that the gun Sinisterra used in the shooting was located just outside of the residence. *Id*. When officers executed the search warrant of W1's residence, they located the key to the recovered Audi and a High-Point .380 caliber handgun. *Id*. W1 also told detectives that on November 18, Sinisterra had texted him, telling him where he was and who he was with. *Id*. W1 reported that Sinisterra's phone number was 203-510-5248 and consented to a search of his own phone. He showed Detective Sanchez text messages from Sinisterra, one of which read "where did some shit are ready," and was received at 6:18 PM on November 18, 2018, twelve minutes after the first 911 call reporting the shooting at 1058 Bank St. *Id*. Detective Sanchez also observed text messages on W1's phone from other known 960 members. *Id*. W1 indicated that Sinisterra would also use Facebook Messenger or Face Time to communicate with him and other 960 members. *Id*.

After their interview with W1, the affiants used a WPD phone to place a call to the 203-510-5248 number that W1 indicated belonged to Sinisterra. Loc. Warrant at 5 ¶ 11; Cell Warrant at 5 ¶ 11. They observed a black Apple iPhone, model number A1661, FCC ID: BCG-E3087A, IC 579C-E3087A, (for which the warrants were sought) begin to ring and display the WPD phone's number. *Id*. They then checked the number against law enforcement websites and determined that it was a Sprint number listed as Sinisterra's. *Id*. Thereafter, they applied for the warrants at issue.

In the affidavit for the Location Warrant, the affiants did not include any facts beyond those described above. Loc. Warrant at 5. In the Cell Warrant affidavit, affiants included three additional paragraphs. Cell Warrant at 5–6 ¶¶ 12–14. In those paragraphs the affiants stated that they knew

"through training and experience," that "a forensic examination of the data contained within cell phones will corroborate information obtained in witness interviews conducted by these affiants," and that "a forensic examination of cell phones will reveal files stored on said media," even if the files had been deleted. *Id*. ¶¶ 12–13. Finally, in paragraph 14, the affiants reiterated that they believed Assault in the First Degree had been committed and specified the type of information that they would like to seize from the phone for the period from October 6, 2018, to November 20, 2018. *Id*. at 5–6 ¶ 14.

In each warrant application, the affiants requested that the approving judge/judge trial referee dispense with Conn. Gen. Stat. § 54-33c's requirement that a copy of the warrant application and affidavit in support of the warrant be given to the subject of the warrant at the time of its execution. Loc. Warrant at 7; Cell Warrant at 8. They made that request on the grounds that "[t]the personal safety of a confidential informant would be jeopardized by the giving of a copy of the affidavits at such time" and "[t]he search is part of a continuing investigation which would be adversely affected by the giving of a copy of the affidavits at such time." *Id*.

A Superior Court Judge authorized both warrants on December 3, 2018. Loc. Warrant at 8; Cell Warrant at 9. The Judge also granted the affiants' request to dispense with Conn. Gen. Stat. § 54-33c's delivery requirement for a period not to exceed two weeks. *Id*.

The Location Warrant, as approved, authorized the search of Sprint/Nextel Corporate Security, 6480 Sprint Parkway, Overland, KS  66251 for:

> Cell Phone Records of Sprint/Nextel cell phone number 203-510-5248 and disclose but not limited to, telephone records, basic subscriber information, incoming and outgoing calls and text messages, any SMS and/or MMS messages, any and all data usage, cell tower locations and/or GPS locations, call identifying information and cell site information and activation from 10/6/18 to 11/20/18.

Loc. Warrant at 8. The Cell Warrant, as approved, authorized the search of a "Black Apple iPhone, model number A1661, FCC ID: BCG-E3087A, IC 579C-E3087A, having a Sprint telephone number of 203-510-5248," located at "the Waterbury Police Department Gang Task Force located at 255 East Main Street," for "[a]ny and all communications from 10/6/18-11/20/18 including but not limited to any and all SMS Text messages, MMS messages, iMessages, OTT Messages, saved photos or videos, and call logs that are located within the data contained within…" the phone. Cell Warrant at 9.

Neither the Location Warrant nor the Cell Warrant contained, on their face, any information regarding the crime or crimes for which the evidence was being sought. Loc. Warrant at 8; Cell Warrant at 9.

According to the Return for and Inventory Forms attached to each warrant, the following property was seized: pursuant to the Location Warrant, on December 4, 2018 "Sprint Cell Phone Records for 203-510-5248 (Loc. Warrant at 9), and pursuant to the Cell Warrant, on December 18, 2018 a "DVD, containing information downloaded from Black IPHONE 7 Plus, serial number FCDV602NHG00" and the iPhone itself (Cell Warrant at 10).

**STANDARD OF REVIEW**

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980)). "To prevent such general,

exploratory rummaging in a person's belongings and the attendant privacy violations, the Fourth Amendment provides that a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Id.* (internal citations and quotations omitted).

**Probable Cause**

"To be lawful under the Constitution, a search warrant must, *inter alia*, set forth evidence establishing probable cause to believe a crime has been committed and that evidence of that crime can be found in what is to be searched." *United States v. Weigand*, 482 F. Supp. 3d 224, 240 (S.D.N.Y. 2020). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Although the probable cause standard "does not demand 'hard certainties' . . . it does require more than a 'hunch.'" *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (quoting *Gates*, 462 U.S. at 238, and *Terry v. Ohio*, 392 U.S. 1, 22, 27 (1968)). Therefore, "[i]n determining whether probable cause exists to support the issuance of a warrant, a judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019) (cleaned up). This decision "must be grounded in sufficient facts to establish the sort of 'fair probability' on which 'reasonable and prudent men, not legal technicians, act.'" *Lauria*, 70 F.4th at 128 (quoting *Gates*, 462 U.S. at 231, 238, 241).

A court reviewing an issuing judge's finding of probable cause "must accord considerable deference to the probable cause determination." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007); *see also Gates*, 462 U.S. at 236 ("[W]e have repeatedly said that after-the-fact scrutiny by courts

of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." (internal quotations omitted)). The reviewing court's task "is simply to ensure that the totality of the circumstances afforded the [issuing judge] 'a substantial basis' for making the requisite probable cause determination." *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) (quoting *Gates*, 462 U.S. at 238). Additionally, the issuing judge's "finding of probable cause is itself a substantial factor tending to uphold the validity of [a] warrant." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). In the end, any doubts that remain "should be resolved in favor of upholding the warrant." *Id.*

**Particularity & Overbreadth**

The Fourth Amendment Warrants Clause both "requires particularity and forbids overbreadth." *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009). "The manifest purpose of this particularity requirement was to prevent general searches." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). By ensuring that a warrant is sufficiently specific, the particularity requirement ensures that a warrant "does not 'leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized.'" *United States v. Conley*, 342 F. Supp. 3d 247, 270 (D. Conn. 2018) (quoting *United States v. Wey*, 256 F. Supp. 3d 355, 380 (S.D.N.Y. 2017)).

Thus, "[t]o be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements. First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Finally, the warrant must specify the items to be seized by their relation to designated crimes." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) (internal citations and quotations omitted), *abrogated*

*on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). "A warrant is facially unconstitutional if it fails to comply with any of these requirements." *Purcell*, 967 F.3d at 178. Specificity in a warrant's application or other supporting documents generally cannot cure the constitutional defects of an unparticularized warrant because "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* at 179 (quoting *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)). "However, 'a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.'" *In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 99–100 (2d Cir. 2016) (quoting *Groh*, 540 U.S. at 557–58).

"[A] search warrant does not necessarily lack particularity simply because it is broad." *Ulbricht*, 858 F.3d at 100. However, a warrant that comports with the Fourth Amendment's particularity requirements may nevertheless be overbroad where the "description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (quotations omitted). Although frequently conflated, "breadth and particularity are related but distinct concepts," *Ulbricht*, 858 F.3d at 102, and "[t]he doctrine of overbreadth represents . . . an intersection point for probable cause and particularity," *Conley*, 342 F. Supp. 3d at 271 (quoting *Wey*, 256 F. Supp. at 382). Thus, "an unparticularized description of the items subject to search under a warrant may result in the warrant exceeding the scope of established probable cause." *Conley*, 342 F. Supp. 3d at 271. "In other words, a warrant is overbroad if the description of items to be searched or seized is broader than the limits imposed by the probable cause justifying the warrant." *Id.*

**Good Faith & The Exclusionary Rule**

"The Fourth Amendment 'contains no provision expressly precluding the use of evidence obtained in violations of its commands.'" *Wey*, 256 F. Supp. 3d at 394 (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). The Supreme Court has nevertheless "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial," in order to "safeguard Fourth Amendment rights generally through its deterrent effect." *Herring v. United States*, 555 U.S. 135, 139–40 (2009). However, "[a] violation of the Fourth Amendment does not necessarily result in the application of the exclusionary rule" as "'exclusion has always been [a court's] last resort, not [a] first impulse.'" *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) (quoting *Herring*, 555 U.S. at 140).

"Application of the exclusionary rule depends on the efficacy of the rule in deterring Fourth Amendment violations in the future as well as a determination that the benefits of deterrence outweigh the costs." *Id.* at 64 (cleaned up). Moreover, "[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." *Id.* (quoting *Herring*, 555 U.S. at 143). Thus, the exclusionary rule's deterrence value "justifies its cost when police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *United States v. Raymonda*, 780 F.3d 105, 117–18 (2d Cir. 2015) (quotations omitted). Conversely, "when police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence," exclusion is not warranted because there is "nothing to deter." *Id.* (quotations omitted).

Accordingly, "the good-faith exception to the exclusionary rule applies when an officer 'genuinely believes that he has obtained a valid warrant from a magistrate judge and executes that warrant in good faith,' as long as the officer's reliance on the warrant is 'objectively reasonable.'" *Conley*, 342 F. Supp. 3d at 273 (quoting *Raymonda*, 780 F.3d at 118). "The government bears the

burden of 'demonstrat[ing] the objective reasonableness of the officers' good faith reliance' on an invalidated warrant.'" *United States v. Sandalo*, No. 21-708-CR, 2023 WL 3885805, at *2 (2d Cir. June 8, 2023) (summary order) (quoting *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011)). And while an officer's reliance on a warrant is entitled to a "presumption of reasonableness," *id.* (quotation omitted), the Supreme Court has identified four circumstances in which the good-faith exception will not apply:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)).

**DISCUSSION**

Sinisterra seeks to suppress all evidence derived from the searches of his cellphone and his cell phone carrier pursuant to the December 3, 2018, warrants. He argues that each of the warrants lacked content particularity, that they were substantively overbroad because they did not establish probable cause to believe that evidence connected to the crimes under investigation would be found on the cellphone (with the exception of Sinisterra's message near the time of the November 11, 2018, shooting), and that the warrants were temporally overbroad. *See* Def.'s Mot. to Suppress at 1, ECF No. 448. He also contends that the good faith exception does not cure any defects in the warrants because they were so lacking in indicia of probable cause and so facially deficient that reliance on them was unreasonable. Def.'s Reply at 8, ECF No. 558. The Government argues that the warrants were supported by probable cause and were not overbroad. Gov. Opp'n. at 1, ECF No. 474. The Government concedes that the warrants may have been insufficiently particular because the crime for which the evidence was sought was not listed on the face of the warrants as

required. *Id*. However, they assert that suppression is not warranted based on that insufficiency, because the good faith exception to the exclusionary rule applies. *Id*. The Court agrees with the government.

**Probable Cause**

Sinisterra raises two arguments regarding probable cause. First, he asserts that the warrants were substantively overbroad, i.e., they did not establish probable cause for the issuing judge to believe that evidence of the October 6 and October 11 shootings would be found on the cellphone or in its records, and that the probable cause established in relation to the November 18 shooting should only have authorized a narrow search for a single text message. *See* Def.'s Mem. at 11–14, ECF No. 448-1. Second, he argues that the warrants were temporally overbroad by allowing searches over a date range (October 6 – November 20, 2018) rather than on specific dates that crimes were committed. *Id*. at 14–18.

*Substantive Overbreadth*

Sinisterra does not dispute that police received information implicating him in all three shootings described in the affidavits. *Id*. at 12. Though probable cause to think a person is implicated in a crime does not equate to probable cause to search a particular place, "…probable cause as to a person's criminal conduct can sometimes inform probable cause … to obtain records for electronic devices linked to that person." *Lauria*, 70 F.4th at 130 n.14.

Sinisterra does not challenge the information provided by either SOI1 or W1. W1 told officers that "Quan" had been in a stolen gray Hyundai during both the October 6 and October 11 shootings and had participated in them "along with several other members of 960." Loc. Warrant at 4 ¶ 6; Cell Warrant at 4 ¶ 6. SOI1 told detectives that 960 members were responsible for the October 11 shooting, and that Sinisterra was one of those members. Loc. Warrant at 4 ¶ 5; Cell

Warrant at 4 ¶ 5. He also stated that one of the vehicles used in the shooting was a silver Hyundai. *Id*. Video evidence gathered by investigators corroborated both SOI1 and W1's description of the vehicle. Loc. Warrant at 3 ¶ 3–4; Cell Warrant at 3 ¶ 3–4. The warrant affidavits, then, establish probable cause to believe that Sinisterra was implicated in the October shootings.

With respect to the November 18 shooting, W1 told detectives on November 20 that Sinisterra was one of the shooters and that Sinisterra had texted him, telling W1 who he was with and where he was around the time of the shooting. Loc. Warrant at 5 ¶ 10; Cell Warrant at 5 ¶ 10. W1 consented to a search of his phone and showed Detective Sanchez a message from Sinisterra that said, "where did some shit are ready," which was sent twelve minutes after the first 911 call regarding the November 18 shooting. *Id*. In addition, W1 told detectives that the Audi used in the shooting was near his residence, told them the key to the Audi was inside his residence, and told them that the .380 pistol used in the shooting was just outside of his residence. *Id*. Officers located all of those items. The Audi matched the vehicle investigators had observed in surveillance video and the pistol was the same caliber as shell casings found at the scene, providing further corroboration of W1's account. *Id*. These facts, as laid out in the warrant, are sufficient to establish probable cause that Sinisterra was involved in the November 18 shooting.

Regarding Sinisterra's cellphone communications, the affidavits also state that Detective Sanchez observed "several other text messages from other known 960 members" on W1's phone, and W1 stated that Sinisterra "usually" used Facebook Messenger or Face Time to communicate with W1 and other members of 960. *Id*. Sinisterra downplays that communication, arguing that general communication between W1 and Sinisterra does not suggest evidence of criminal activity. Def.'s Mem. at 13. He argues that if W1 had not divulged that single text message and tied it to the November 18 shooting, "law enforcement would have had no basis to search the phone at all,"

and argues "any probable cause derived from that one text message… did not somehow also permit searches unrelated to that incident." Def.'s Reply at 5. Sinisterra concedes that the affidavits link his phone to the text message sent twelve minutes after the November 18 shooting. Def.'s Mem at 12. But he argues that the "where did some shit are ready" message, viewed by Detective Sanchez on W1's phone, only established probable cause for an extremely narrow search of Sinisterra's phone to find that specific message. *Id*.

This argument is flawed. It asks the Court to review each fact and event contained in the affidavit on a piecemeal basis, while the standard requires the issuing judge to "make a practical, common-sense decision… *given all the circumstances set forth in the affidavit before him…*" and for the reviewing Court to determine if the affidavit, "under the totality of the circumstances… provided a substantial basis for the [issuing] judge's conclusion[.]" *Boles*, 914 F.3d at 102 (emphasis added); *Thomas*, 788 F.3d at 349.

Here, the warrant affidavits clearly established probable cause to conclude that Sinisterra was involved in all three shootings described therein. He was implicated by two individuals who corroborated each other and were in turn corroborated by other evidence. The affidavits further averred that both Sinisterra and W1 were members of 960, and that they communicated with each other via text message, Facebook messenger, and Facetime.[2] Finally, Sinisterra used his cell phone to contact W1, arguably confessing, minutes after a shooting in which he was implicated by W1.

With respect to the November 18, 2018, shooting at 1058 Bank St., the affidavits established probable cause that evidence of the crime committed would be found on Sinisterra's cell phone and in the phone's records from Sprint/Nextel. The phone was used to send the "where

---

[2] Detective Sanchez noted text messages from several other 960 members on W1's phone, indicating that members of the gang communicated via text message, and W1 told him that Sinisterra used Facebook messenger and Facetime to communicate with other members.

did some shit are ready" message, arguably a confession, just twelve minutes after the shooting. The phone was identified as Sinisterra's, and Sinisterra was identified as a shooter in that incident by W1. The temporal proximity of the text message to the shooting established a fair probability that Sinisterra had the phone with him at the time of the shooting. Accessing the phone's records might reasonably have revealed Sinisterra's location during the shooting. And if Sinisterra texted W1 after the shooting, he may have texted or otherwise used his phone to communicate with other 960 members around that same time. *See United States v. Disla Ramos*, No. 22-CR-431 (LJL), 2022 WL 17830637, at *19 (S.D.N.Y. Dec. 21, 2022) ("There thus was probable cause to believe that communications and other evidence of a relationship with an individual other than Rosario who was also involved in the robbery existed (*i.e.*, the warrant was not overly broad)"). The content of those messages and communications would reasonably be revealed by a phone extraction.

The information in the warrant affidavits regarding the October shootings indicated a pattern of communication among 960 members that defeats Sinisterra's overbreadth argument. The same group, 960, was under investigation for *all* of the shootings. Sinisterra was implicated in both October shootings. And the warrant established that 960 members would communicate via text, Facebook Messenger, and Facetime. These facts, taken together, do not establish with "hard certainty" that evidence of the crimes committed would be found on Sinisterra's phone or in its records, but they certainly rise above a mere "hunch." *Lauria*, 70 F.4th at 128. Further, the nexus that must exist between the criminal activities alleged and the location to be searched (in this case, Sinisterra's phone) "does not require direct evidence" and "may be based on reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (internal citations omitted). Knowing that Sinisterra communicated with another 960 member shortly after the November 18 shooting, the issuing court could reasonably

infer that Sinisterra may have engaged in similar communications regarding the other two shootings in which he was implicated.

Finally, Sinisterra compares the facts here to those in *United States v. Garcia*, No. 3:20-CR-00058 (KAD), 2023 WL 4850553 (D. Conn. July 28, 2023), a case in which this Court found a warrant authorizing a cellphone search to be overbroad. That comparison is misplaced. In *Garcia*, the affidavit contained *no information* that a cell phone was used at all in relation to the crime but relied on general statements about affiants' knowledge that "people who commit crimes often communicate with their co-conspirators…" and that "[t]he most common method of communications is through cellular phones." *Id*. at 7. Here there is information in the affidavits directly linking Sinisterra's phone to an inculpatory text sent minutes after a shooting that Sinisterra was implicated in. The affidavit in question in *Garcia* did not "include the fact that [the] homicide investigation was part of a broader investigation into gang violence in the Bridgeport area," or "… any information regarding the gang's prolific use of social media (and by inference their cell phones) to document their offenses…" *Id* at *9, n.6. The affidavits supporting the search of Sinisterra's phone did include that additional context: they were part of a broader investigation of the 960 gang, detectives observed text messages from other gang members on W1's phone in addition to text messages from Sinisterra, and W1 told detectives that he, Sinisterra, and other 960 members communicated via Face Time and Facebook messenger.

For all of the reasons above, the Court holds that there were sufficient facts stated in the warrant for the issuing court to find the necessary nexus between the three crimes in question and Sinisterra's cellphone. The warrants authorizing searches of the phone and its records were therefore not substantively overbroad.

*Temporal Overbreadth*

Relatedly, Sinisterra argues that the two warrants, which sought various categories of information from his phone and his carrier, records from October 6 – November 18, 2018, were temporally overbroad. Def.'s Mem. at 14–18. The crux of his argument is that the warrant affidavits averred that crimes were committed on three discrete dates—October 6, October 11, and November 18—and that "[t]he warrants did not contain any information to suggest that cellphone activity on different dates would yield evidence connected to those crimes." *Id*. at 15. Sinisterra, however, cites no authority limiting searches, digital or otherwise, to specific dates on which crimes allegedly occurred.

District courts in this circuit have addressed overbreadth challenges related to time frames in warrants. "The case law is hardly uniform as to when, if at all, the absence of a time frame would violate the overbreadth prong of the Fourth Amendment, and the Second Circuit has yet to consider the issue." *United States v. Cohan*, 628 F. Supp. 2d 355, 365 (E.D.N.Y. 2009). "Amongst the district courts in this circuit, while there is general agreement that a time frame is *relevant,* there is no apparent consensus as to when one is required." *Id*. at 366 (collecting cases). Whether or not a temporal limitation is necessary "depends on the context of the case, as the 'complexity and duration of the alleged criminal activities render a time frame less significant than in a case that required a search for a small set of discrete items related to one or only a few dates.'" *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 306 (S.D.N.Y. 2018) (quoting *United States v. Hernandez*, No. 09 CR 625 (HB), 2010 WL 26544, at *11 (S.D.N.Y. Jan. 6, 2010)).[3]

---

[3] The majority of the cases cited by Sinisterra in support of his temporal overbreadth argument, most of which came from other circuits or state courts, address situations in which the warrants did not specify *any* time period. That is not the case here, where the defendant is implicated in three shootings, and the search is cabined to include only the time period between the day of the first shooting to the date of defendant's arrest, two days after the third shooting.

Courts in this Circuit have found warrants constitutional that authorized digital searches well beyond the 46-day range at issue here. *See United States v. Disla Ramos*, No. 22-CR-431 (LJL), 2022 WL 17830637, at *10 (S.D.N.Y. Dec. 21, 2022). The court in *Disla Ramos* upheld a warrant for cellular data from March 1, 2022, to August 10, 2022 (162 days), related to a single robbery that occurred on March 31, 2022. The court reasoned that though the issue presented a "somewhat close question," "[e]vidence from toll records of communications between Disla Ramos and Rosario in the month prior to the robbery would help to demonstrate that the call between the two an hour after the robbery was no accident or misdial…." *Id*. Similarly, in *United States v. King*, No. 21-CR-255 (NSR), 2022 WL 875383, at *4 (S.D.N.Y. Mar. 24, 2022), the court upheld a search warrant for a phone's internal electronic information from March 1, 2021, through April 8, 2021, in relation to a single shooting that occurred on March 12, 2021. The court reasoned that the warrant, which "authorized the Government to look for evidence concerning the identity or location of the owner or user of the Phone, the geographic location of the Phone on March 12, 2021, and any media, messages, or other system files pertaining to the alleged offense," was not a "general search of all of the phone's files," as it was "limited by both time and subject matter." *Id*.

Here, the WPD was investigating a spate of shootings over a short period of time involving 960 members and in which Sinisterra, the user of the phone, was implicated. It is a "reasonable inference" based on the "facts presented" and "common sense and experience" that once investigators established the required nexus between Sinisterra's phone and crimes committed on October 6, October 11, and November 18, evidence of those crimes from surrounding dates would be found on the phone as well. *See Singh*, 390 F.3d at 182. Indeed, common sense and knowledge of modern telecommunications provided sound bases to conclude that evidence of those crimes

would probably be found on Sinisterra's phone or the phone's records during the date range approved.

The temporal limitations placed on the warrants here were reasonable and did not render the warrants an unconstitutional "general search" of Sinisterra's phone or the phone's records. The warrants were not temporally overbroad.

## Particularity

Sinisterra argues that the warrants lacked content particularity because "the crime being investigated was not listed in the warrants, and the incorporated documents did not accompany the warrants." Def.'s Mem. at 7–11. The Government does not dispute that the crime being investigated was not listed or that the incorporated documents did not accompany the warrant. They instead rely on the good faith exception to the exclusionary rule.

The Second Circuit has routinely stated that to be sufficiently particularized, a warrant "must identify the alleged crime for which evidence is sought." *In re 650 Fifth Ave.*, 830 F.3d at 99. These warrants are therefore constitutionally defective, as they do not comply with the first prong of the Fourth Amendment's particularity requirement.

A court may, in some circumstances, consider a warrant's supporting application and affidavits to cure this deficiency. These warrants, however, cannot be cured by incorporating those materials. "[T]he Fourth Amendment 'requires particularity in the warrant, not in the supporting documents,'" *Wey*, 256 F. Supp. 3d at 381 (quoting *Groh*, 540 U.S. at 557), and a court may only construe a warrant with reference to its supporting materials "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *In re 650 Fifth Ave.*, 830 F.3d at 99–100  (quoting *Groh*, 540 U.S. at 557–58); *see United States v. Sandalo*, No. 21-708-CR, 2023 WL 3885805, at *2–3 (2d Cir. June 8, 2023) (summary order) (explaining that a

warrant that incorporated its supporting materials "remain[ed] constitutionally defective" where the "documents were not 'attached' in the legally relevant sense; they were not included with the search warrant when it was presented to [the defendant]").[4] In this case, the warrant forms do incorporate the supporting affidavit and application. But those documents were not attached to the warrants at the time of execution because the issuing court granted the applicants' request pursuant to Conn. Gen. Stat. § 54-33c that they be withheld for a period of time. Accordingly, under *Sandolo,* the Court may not consider the application or affidavit, rendering both warrants facially deficient.

**Good Faith**

As the Court has rejected Sinisterra's probable cause and overbreadth arguments above, these arguments also fail to the extent they are advanced as a means of defeating any reliance by the Government on the good faith exception to the warrant requirement.

The warrants' only established constitutional infirmity was their failure to identify the crimes for which probable cause was established in accordance with the Fourth Amendment's particularity requirement. "Not every facially deficient warrant, however, will be so defective that

---

[4] As this Court has previously noted, *Garcia*, 2023 WL 4850553, at *10 n. 8, although both the Supreme Court in *Groh* and the Second Circuit in *In re 650 Fifth Avenue* used the conjunctive "and" when stating that a warrant may be construed by reference to its supporting materials "if the warrant uses appropriate words of incorporation, *and* if the supporting document accompanies the warrant," *In re 650 Fifth Ave.*, 830 F.3d at 99–100 (emphasis added) (quoting *Groh*, 540 U.S. at 557–58), neither *Groh* nor *In re 650 Fifth Avenue* explicitly held that *both* incorporation and attachment were required because in both cases the warrants' supporting materials were *neither* incorporated by *nor* attached to the warrants themselves. *See United States v. Cooper*, No. 1:18-CR-00126 EAW, 2019 WL 6167235, at *3 n.2 (W.D.N.Y. Nov. 20, 2019) (assuming, without deciding, that "*Groh* requires that the Fourth Amendment's particularity requirements are only satisfied when the copy of the warrant left at the place of execution included the incorporated affidavit"); *State v. Browne*, 291 Conn. 720, 735 (2009) ("*Groh* is ambiguous, however, on whether the fourth amendment requires an otherwise incorporated warrant application and affidavit to accompany the warrant at the time of execution."). And in *In re 650 Fifth Avenue*, even though the warrant application was concededly not attached to the warrant, the Second Circuit went on to assess whether the application was adequately incorporated by reference, an analysis which would have been unnecessary if both incorporation and attachment are required to meet the particularity requirement. *See* 830 F.3d at 101. Likewise, the Connecticut Supreme Court has determined that under some, albeit limited, circumstances, incorporation alone is sufficient even if the application is not attached. *See Browne*, 291 Conn. at 737. Although not a precedential opinion, the Court accepts *Sandolo* as the Circuit Court's clarified, though unexplained, assessment of the issue.

an officer will lack a reasonable basis for relying upon it." *Rosa*, 626 F.3d at 66. Rather, application of this fourth *Leon* scenario "depend[s] on the circumstances of the particular case." *In re 650 Fifth Ave. & Related Props.*, 934 F.3d 147, 162–63 (2d Cir. 2019) (quoting *Leon*, 468 U.S. at 923). "The animating concern is whether the 'warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.'" *Id.* (quoting *Leon*, 468 U.S. at 923).

As this Court noted in its recent decision in *United States v. Langston*, No. 3:20-CR-00058 (KAD), 2023 WL 4935984, at *14 (D. Conn. Aug. 2, 2023), in this context, courts have often found that the good faith exception will save a facially defective warrant where the executing officers nevertheless conducted the search pursuant to the warrant "in accordance with the appropriate limitations set forth in the unincorporated and unattached supporting application or affidavit." *Sandalo*, 2023 WL 3885805, at *1 (citing *Rosa*, 626 F.3d at 64). For example, in *Sandalo*, the court applied the good faith exception where officers executed a warrant for the search of an apartment that failed to identify the crime on its face and was insufficiently particularized and overbroad. The Court reasoned that "the officers executing the search warrant were clearly aware of and conducted the search according to the limitations set forth in the application and affidavit." *Id.* at *2. Significantly, the affidavit in *Sandalo*, which was incorporated by the warrant but not attached at the time of the warrant's execution, did not contain the same defects as the warrant itself, as it expressly excluded areas of the apartment that were outside of the scope of probable cause and limited the timeframe of the items to be seized to the relevant periods of investigation. *Id.* at *3. Further, the warrant application specified the alleged crimes for which probable cause was established, the search team executing the warrant was led by one of the affiants, and the search team seized only items related to the crimes specified in the application and did not search areas falling outside of the scope of the warrant. *Id.*; *see also Rosa*, 626 F.3d at

64–65 (finding that the good faith exception applied to a warrant that did not set forth the nature of the suspected criminal activity where the affiant and officers executing the search were under substantial time pressures, the affiant was personally involved in the execution of the warrant, and the executing officers complied with the limits of the search as set forth in the warrant's supporting application).

Here, as in *Sandalo*, the affidavits and applications supporting the warrants remedied the warrants' defects because they specified the crime for which probable cause was established: Assault in the First Degree. Unlike *Sandalo*, as Sinisterra points out, the individuals who executed the physical searches on Sinisterra's phone, Sprint personnel in Kansas for the Location Warrant and Detective Morgan for the Cell Warrant, were not the affiants on either warrant. Def.'s Rep. at 9. However, the warrants in question here were more particular, on their faces, than in *Sandalo*. They imposed explicit substantive and temporal parameters that, so long as they were followed, would prevent the searchers from exceeding the scope of the warrant as known to the actual affiants. The face of each warrant limited searchers to seizing information only from October 6 to November 20, 2018, and each specified exactly what type of information could be seized from that period. As the Government notes in their opposition, all evidence and reports generated as a result of the warrants were consistent with the time limitations. Gov. Opp'n. at 24. Sinisterra makes no claim that the searches as executed went beyond the scope authorized by the warrants.[5] Therefore, even though the warrants did not identify the crime, the application and the manner in which the

---

[5] Sinisterra may later challenge specific evidence obtained from the cell phones if he believes such evidence fell outside the scope of the warrants' authorization. *See also United States v. Hernandez*, No. 09 CR 625 (HB), 2010 WL 26544, at *9 (S.D.N.Y. Jan. 6, 2010) ("Further, the fact that Castillo fails to point to a single document that was seized and was outside the relevant time frame of the alleged criminal activities assuages any concerns I may have had and indicates that the search authorized by the magistrate was not constitutionally overbroad.")

warrants were executed made it utterly reasonable for the executing officers to believe in and rely upon the validity of the court issued warrants.

Moreover, the warrants did not authorize a blanket search of Sinisterra's phone or the phone records. This Court has found the scope of the authorized search was supported by probable cause and was not overbroad. And the warrants provided enough specificity with respect to the types of information sought that, when combined with the temporal limitation, were sufficient to satisfy the Fourth Amendment's other particularity requirements. Accordingly, the Court cannot hold that law enforcement officers were not acting in good faith when relying on the judicially authorized warrants simply because the crime for which probable cause had been found was not listed on the face of the warrants. The Court therefore finds that the good faith exception to the exclusionary rule applies.

**CONCLUSION**

For the foregoing reasons, Defendant Sinisterra's motion to suppress, ECF No. 448, is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of March 2024.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE